UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD G. KANE,                                    Case No. 11-15421

     Plaintiff,                          Patrick J. Duggan
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Michael Hluchaniuk
                                                   United States Magistrate Judge

     Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 18, 21)**

I.  **PROCEDURAL HISTORY**

  A.  <u>Proceedings in this Court</u>

  On December 9, 2011, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Patrick J.

Duggan referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for disability benefits.  (Dkt. 2).

This matter is currently before the Court on cross-motions for summary judgment.

(Dkt. 18, 21).

  B.  <u>Administrative Proceedings</u>

  Plaintiff filed the instant claims on December 17, 2009, alleging that he

became unable to work on September 4, 2009.  (Dkt. 9-2, Pg ID 50).  The claim was

initially disapproved by the Commissioner on April 13, 2010. (Dkt. 9-4, Pg ID 95-98). Plaintiff requested a hearing and on January 13, 2011, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Beth J. Contorer, who considered the case de novo. In a decision dated March 16, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 9-2, Pg ID 50-58). Plaintiff requested a review of this decision on March 23, 2011. (Dkt. 9-2, Pg ID 46). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits, the Appeals Council, on October 6, 2011, denied plaintiff's request for review. (Dkt. 9-2, Pg ID 39-41); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 46 years of age at the time of the most recent administrative hearing. (Dkt. 9-2, Pg ID 66). Plaintiff's relevant work history included work as a carpenter, painter, and contractor. (Dkt. 9-2, Pg ID 56). The ALJ applied the five-Step disability analysis to plaintiff's claim and found at step one that plaintiff had

not engaged in substantial gainful activity since his alleged onset date of September 4, 2009. (Dkt. 9-2, Pg ID 52). At step two, the ALJ found that plaintiff's status post lumbar laminectomy, discectomy and fusion, bilateral sciatica, lumbar disc protrusion with right foraminal stenosis, and advanced degenerative disc disease were "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 9-2, Pg ID 53). At step four, the ALJ found that plaintiff could not perform his previous work. (Dkt. 9-2, Pg ID 56). The ALJ found that plaintiff had residual functional capacity to perform a reduced range of sedentary work with following limitations: plaintiff can lift and/or carry up to ten pounds occasionally, and lift and/or carry less than ten pounds frequently; sit for six of eight and stand and/or walk for two of eight hours of a workday with the ability to alternate between sitting and standing as necessary; occasionally perform all postural activities, except should never climb ladders; occasionally push and/or pull and he must avoid concentrated exposure to hazards and extremes in temperature and humidity. The ALJ also concluded that, mentally, plaintiff retained sufficient attention and concentration to understand, remember and follow simple instructions. (Dkt. 9-2, Pg ID 53). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. *Id.*

B.      Plaintiff's Claims of Error

Plaintiff argues that the ALJ improperly failed to address Dr. Dibai's (a consulting examiner) finding of a pain disorder with personality disorder traits and a GAF score of 45. (Tr. 350-54).  According to plaintiff, the low GAF score indicates his mental limitations are more significant than the ALJ found.  Plaintiff maintains that the ALJ's conclusions that plaintiff's mental limitations to be non-severe, only limiting him to simple, unskilled instructions is erroneous, requiring reversal. Plaintiff also contends that the ALJ failed to consider plaintiff's mental impairments in combination with his pain as required by 20 C.F.R. § 404.1523.

According to plaintiff, a mental RFC finding is not optional.  Even competitive unskilled work carries with it certain basic mental demands including the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervisors and coworkers; and to adjust to changes in work routine.  Plaintiff contends that the ALJ failed to, as required, minimally consider the four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Simply, the ALJ did not conduct a special technique review and her decision finding plaintiff not disabled is silent on the matter of his mental illnesses.  As a result, plaintiff asserts that the ALJ's failure to either make her own determination of plaintiff's mental conditions or to consult the opinion of an examining physician renders her

RFC determination incomplete.

Plaintiff also argues that the ALJ neglected to give Dr. Ehardt's opinion controlling weight and did not provide adequate reasons for failing to give his opinion substantial deference as required by 20 C.F.R. § 404.1527 and SSR 96-2p. Specifically, plaintiff asserts that the ALJ erred in rejecting Dr. Ehardt's March 15, 2010 opinion that plaintiff could "lift or carry less than 10 pounds, sit, stand and/or walk a total of less than 8 hours and could never perform any postural maneuvers except balance frequently." (Tr. 18). According to plaintiff, the ALJ improperly gave Dr. Ehardt's opinion little weight because he is a family practitioner and because it is purportedly "inconsistent with his reported findings." *Id.* In this vein, the ALJ cites to Dr. Ehardt's clinical findings that indicated "normal" biceps, a straight leg raising of 75 degrees bilaterally, and a slow shuffling gait that did not require a walking aid. *Id.* However, plaintiff contends that the ALJ here was substituting her judgment of plaintiff's abilities rather than relying on the medical opinion of Dr. Ehardt. Plaintiff further contends that there are no inconsistencies between Dr. Ehardt's findings during examinations and his medical opinions. While plaintiff was found to have "normal" biceps, plaintiff argues that in no way indicates any inconsistency since plaintiff may still be experiencing pain and weakness. While the ALJ determined that plaintiff is able to walk without his cane, albeit with a "slow shuffling gait," plaintiff asserts that does not mean that he would be able to

operate in a workplace without his cane.  Taking an extended amount of time to walk a short distance would diminish his productivity and is unsustainable during an eight hour workday.

Plaintiff also objects to the ALJ's conclusion that there is no evidence in the record to reveal negative side effects from Vicodin, Paxil, or any other medication plaintiff was taking.  Plaintiff contends that a physician is likely to only note adverse reactions to medications, not the common side effects that are typically known to occur.  In this case, plaintiff was taking Vicodin, a narcotic pain reliever.  Since the common side effects of Vicodin include mental confusion, unusual thoughts or behavior, and mood changes, they would preclude plaintiff from being able to consistently work full time as it would interfere with the basic mental abilities to perform work.  Additionally, plaintiff points out that Paxil can cause a laundry list of negative side effects including, but not limited to headache, dizziness, weakness, difficulty concentrating, forgetfulness, sleepiness or feeling "drugged," pain in the back, muscles, bones, or anywhere in the body, tenderness or swelling of joints, and confusion.  As a result of the side effects of the medications plaintiff took, he argues that he would have significant limitations in concentration, persistence and pace from these in addition to those from his mental impairments themselves, which should have been taken into account by the ALJ.

Plaintiff also contends that the ALJ's credibility analysis is flawed. According

to plaintiff, instead of properly evaluating plaintiff's credibility, the ALJ recited

boilerplate rationale for declining to view plaintiff's testimony as credible.  (Tr.

16-17).  Plaintiff argues that the ALJ failed to sufficiently account for his physical

limitations in the RFC/hypothetical questions posed to the vocational expert.

Although the ALJ tried to accommodate plaintiff's limitations by including a

sit/stand at will alternative in his RFC determination, he still failed to take into

account all of plaintiff's other limitations and accounts of pain.  Plaintiff had

testified that he was able to sit for about 20 minutes and stand for about 10 minutes

a day and then needed to lie down or else he would experience significant pains. (Tr.

33-34).  According to plaintiff, there is no indication that he would be able to

continue to alternate between sitting and standing on a regular basis for eight hours a

day without being in unbearable pain.  Further, plaintiff noted that he suffers from

back spasms about six to seven times a day and only finds relief with icing and

resting.  (Tr. 34-35).  The ALJ, however, failed to address this in her credibility

determination, resulting in an erroneous RFC finding.  According to plaintiff, the

ALJ also failed to consider the evidence favorable to plaintiff in making her

credibility determination when she disregarded the section of the DDS consulting

physician's report indicating that Plaintiff was credible.  (Tr. 379).  As a result,

plaintiff contends that the ALJ's reliance on boilerplate rationale is insufficient to

support a finding that plaintiff is not credible.  Thus, the ALJ's decision should be

Report and Recommendation
Cross-Motions for Summary Judgment
*Kane v. Comm'r*; Case No. 11-15421

reversed and remanded.

Plaintiff next contends that the ALJ failed to take into account his subjective complaints of pain and the effects of his medications as required by SSR 96-7p.  In this case, plaintiff's testimony details the amount of his pain and its limiting effects on his abilities. Plaintiff is unable to perform general daily activities without experiencing unbearable pain; he cannot cook, clean, or go shopping for long.  (Tr. 36-40).  The severity of plaintiff's pain can further be deduced by the significant number of hospital visits for back pain, the doctors' diagnosis of chronic back pain, and the surgical attempts at remedying the pain.  According to plaintiff, the ALJ failed to take any of these factors into consideration, and thus her decision should be reversed or remanded.

Plaintiff next objects to the ALJ's reliance on the vocational expert testimony. Specifically, plaintiff asserts that the ALJ failed to indicate the frequency of the stand/sit option as required by SSR 96-9p.  While it may be possible for plaintiff to alternate between standing and sitting at the VE recommended jobs, plaintiff says there is no indication as to how frequently plaintiff may alternate between the two. Because plaintiff does not have the ability to sit or stand for long without needing to lie down and cannot be in one position for longer than 10-20 minutes, it is highly likely that plaintiff's ability to perform basic work functions would significantly be affected by the frequency of his needing to alternate between the two positions.  (Tr.

33-34).  Additionally, plaintiff contends that the ALJ failed to meet her step five burden and show that plaintiff would be able to work from a standing position. Even if working as a general assembler, packager, or sorter can in reality be done while alternatively sitting and standing, plaintiff asserts that there is a high likelihood that plaintiff would still be unable to accomplish his tasks over the course of an eight hour work day without being in severe pain.  For example, if plaintiff is required to hunch over a table when in the standing position, he is likely to cause another back injury.  As a result of the ALJ's failure to consider these factors in the hypothetical she presented to the VE, plaintiff says she has failed to meet her step five burden, and her decision must be reversed or remanded.

Finally, plaintiff argues that the ALJ in this case did not adequately obtain an explanation from the VE regarding his testimony that is excluded from the DOT that the recommended jobs would permit a stand/sit at will alternative. Therefore, there is no way of determining the frequency of the alternative or even if it exists with the positions the VE mentioned.  According to plaintiff, the VE merely testified that he came to his conclusions based on his experience and market research and offered no explanation into either avenue.  He did not discuss whether he has experience with placing 2000 people into such positions or what type of market research was conducted that led to his conclusion.  An ALJ has an affirmative duty to plaintiff to obtain a reasonable explanation from the VE regarding the apparent conflict

Report and Recommendation
Cross-Motions for Summary Judgment
*Kane v. Comm'r*; Case No. 11-15421

between his testimony and the DOT.  SSR 00-4p. Additionally, before the ALJ may

rely on the VE's testimony, she must explain in her decision how she resolved the

apparent conflict between the testimony and the DOT.  In this case, plaintiff asserts

that the ALJ failed to obtain any explanation as to the apparent conflict between the

VE's testimony and the DOT other than relying on the VE's conclusions.  Since

there is no explanation as to how the VE came to his conclusions and the ALJ did

not resolve the conflict in her decision, plaintiff says that the ALJ erred in failing to

meet her step five burden.  Plaintiff also points out that  VE failed to provide any

DOT numbers to support his testimony as to what jobs continue to exist.  He

identified that plaintiff may be able to perform the requirements of representative

occupations such as assembler, packager, and sorter, but he did not indicate the

corresponding DOT numbers against which plaintiff may check his abilities to

determine any potential conflicts. According to plaintiff, he is therefore, incapable

of identifying the requirements of the jobs identified and making a determination of

whether he in fact does possess the capabilities required by the VE identified

positions.

B.     The Commissioner's Motion for Summary Judgment

The Commissioner acknowledges that ALJ did not include a discussion of the special technique, as required.  The Commissioner contends, however, that any such error should be deemed harmless because the ALJ discussed the relevant evidence and it is apparent from the decision why the ALJ did not find his mental impairment to be severe.  (Tr. 14).  Specifically, the ALJ discussed Dr. Dibai's conclusion that plaintiff had an unremarkable examination from a psychiatric standpoint because he had no signs of a significant cognitive or mood disorder.  (Tr. 14).  Even if the ALJ had applied the special technique, the Commissioner contends that it is readily apparent from the ALJ's discussion that substantial evidence supports her finding that plaintiff did not have a severe mental impairment.

Plaintiff incorrectly states that the ALJ did not mention his mental condition or Dr. Dibai's report.  Contrary to plaintiff's assertions, the Commissioner contends that the ALJ discussed Dr. Dibai's report and plaintiff's diagnosis of a pain disorder and used it as a basis for finding no severe mental impairment.  (Tr. 14).  The Commissioner points out that Dr. Dibai's report supports a finding that plaintiff had essentially no limitations in any area of functioning, and there is no other examination report in the record concerning his mental condition.  (Tr. 350-54).  Dr. Dibai diagnosed pain disorder associated with psychological factors and a general medical condition.  (Tr. 353).  However, Dr. Dibai opined that "[f]rom a psychiatric

standpoint, [Plaintiff] appeared unremarkable" and that "[t]here were no signs of significant cognitive or mood disorder or any other psychiatric symptoms or signs." (Tr. 354). According to the Commissioner, the ALJ cited these findings in assessing plaintiff's mental impairment. (Tr. 14). Thus, the Commissioner contends that the ALJ's finding that plaintiff had no severe impairment was amply supported by Dr. Dibai's report, and the ALJ would have found that plaintiff did not have a severe mental impairment even if he had applied the special technique.

The Commissioner urges the Court to reject plaintiff's argument regarding the GAF score. As an initial matter, the Commissioner points out that GAF scores are of limited importance in the context of disability determinations. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 511 (6th Cir. 2006) ("we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place") (citations omitted). Furthermore, the significance of the GAF score assigned by Dr. Dibai is questionable, given that Dr. Dibai plainly stated that plaintiff was unremarkable from a psychiatric standpoint. (Tr. 354). The Commissioner contends that plaintiff fails to show that the ALJ committed reversible error by not referencing the GAF score.

The Commissioner urges the Court to reject plaintiff's argument that the ALJ erred by finding that he had the RFC to understand, remember, and follow simple instructions because plaintiff fails to demonstrate any error in the ALJ's RFC

determination.  The Commissioner points out that plaintiff had no treatment for a mental condition, aside from a prescription for Paxil, and Dr. Dibai found no signs of a significant cognitive or mood disorder.  (Tr. 354).  Thus, the Commissioner argues that plaintiff simply fails to demonstrate any reversible error in the ALJ's assessment of his mental condition.

Next, the Commissioner argues that the ALJ properly found that Dr. Ehardt's opinion was not supported by the clinical findings reported by Dr. Ehardt.  (Tr. 18, 356-57).  Specifically, while Dr. Ehardt opined that plaintiff had extreme difficulties walking and standing, he observed that plaintiff did not need to use a walking aid and could walk in tandem and on his heels and toes.  (Tr. 357).  Additionally, although Dr. Ehardt noted that Plaintiff had a slow, shuffling gait, his other observations conflicted with this opinion.  (Tr. 357).  Furthermore, Dr. Ehardt noted that he could engage in straight leg raising to seventy-five degrees.  (Tr. 357).  Thus, the Commissioner argues that the ALJ reasonably found that Dr. Ehardt's opinion was internally inconsistent.  (Tr. 18).  The ALJ also found a general lack of clinical and objective evidence to support Dr. Ehardt's opinion.  (Tr. 18).  According to the Commissioner, the ALJ's finding is illuminated by his discussion of plaintiff's treatment history in the context of plaintiff's credibility.  (Tr. 18).  The ALJ stated that there was ample evidence to support the severity of plaintiff's condition from September 2009, his alleged onset of disability date, through his surgery in

November 2009.  (Tr. 18).  The ALJ noted that there were no records or objective

and clinical findings after that time to support plaintiff's alleged limitations.  (Tr.

18).  The ALJ specifically observed that plaintiff did not present to doctors after

December 2009 for complaints of lower back pain.  (Tr. 17).  According to the

Commissioner, plaintiff does not dispute this lack of clinical and objective evidence,

and it is strong support for the ALJ's finding that Dr. Ehardt's opinion was entitled

to little weight.  The ALJ also pointed out that Dr. Ehardt was not a specialist, and,

according to plaintiff, did not treat him regularly for his back condition.  (Tr. 18,

41).  The Commissioner contends that the ALJ reasonably assigned Dr. Ehardt's

opinion less weight because he did not specialize in the condition plaintiff alleged

was disabling.  *See* 20 C.F.R. § 404.1527(d)(5) (More weight is generally given to

the opinion of a specialist about medical issues relating to his or her area of

specialty).  Furthermore, the Commissioner points out that Dr. Ehardt's opinion had

less probative value because he did not provide plaintiff the type of long-term

treatment that normally gives a treating physician's opinion special significance.

Thus, the Commissioner contends that substantial evidence supports the ALJ's

assessment of Dr. Ehardt's opinion.

 The Commissioner also argues that, contrary to plaintiff's contentions, the

ALJ went far beyond the purported "boilerplate" statement in assessing plaintiff's

credibility by discussing the conflict between plaintiff's general treatment history

for back pain and his alleged limitations.  (Tr. 17-18).  The ALJ also discussed how

specific medical evidence contradicted plaintiff's claims of headaches and upper

extremity symptoms.  (Tr. 17).  While the ALJ found that plaintiff alleged upper

extremity problems, there was no significant support in the record for upper

extremity impairments.  (Tr. 17). After plaintiff's alleged onset of disability date,

there was only one treatment note pertaining to upper extremity problems, in

November 2009.  (Tr. 343-46). At that appointment, plaintiff was instructed to

undergo electrodiagnostic testing of his upper extremities, but there is no indications

that he did so.  (Tr. 345).  Similarly, the ALJ found that plaintiff's complaints of

regularly occurring headaches were unsupported.  (Tr. 17, 45). The ALJ noted that

plaintiff was treated for headaches following a myelogram in October 2009, but that

since that time, there was no other evidence showing that

plaintiff received treatment for headaches.  (Tr. 17). The ALJ found that since

plaintiff's surgery in November 2009, there were no records or objective and

clinical findings to support plaintiff's alleged continuing limitations.  (Tr. 18). The

ALJ acknowledged that plaintiff had conservative treatment for lower back pain

commencing in January 2009, and surgery in November 2009.  (Tr. 17).  But, the

ALJ noted that beyond an appointment for treatment of back pain in December

2009, there was no further evidence that plaintiff sought treatment for his condition.

(Tr. 17).  The ALJ found that it was reasonable to expect that a person with

15

plaintiff's alleged debilitating impairments would have sought further treatment after surgery.  (Tr. 18).  According to the Commissioner, the ALJ reasonably concluded that this lack of continuing treatment undercut plaintiff's credibility.  *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (A claimant's failure to seek treatment may undercut his or her credibility with respect to subjective complaints).  Plaintiff argues generally that his claimed limitations were supported by the fact that he had extensive treatment, however he does not dispute the ALJ's finding that such treatment apparently ended shortly after surgery.  Thus, the Commissioner contends that substantial evidence supports the ALJ's assessment of plaintiff's credibility.

As to plaintiff's claim regarding medication side effects, the Commissioner argues that it was reasonable for the ALJ to expect that if plaintiff was having serious side effects, they would have been reported to, and noted by, his doctors.  This assumption was bolstered by the fact that a doctor noted that plaintiff complained of side effects from Percocet, which the doctor discontinued.  (Tr. 219).  Plaintiff also lists side effects that his medications could cause and argues, in essence, that the ALJ should have found that he had those side effects.  The Commissioner argues, however, that simply because those medications could cause side effects, does not mean that plaintiff actually experienced them.  Therefore, the Commissioner asks the Court to conclude that plaintiff fails to demonstrate any flaw

in the ALJ's well-reasoned credibility determination.

As to plaintiff's complaints about the vocational expert testimony, the Commissioner contends that plaintiff's argument regarding the frequency that the hypothetical person would be permitted to shift between sitting and standing is directly contradicted by the hearing record because the ALJ specified "as necessary." Further, plaintiff's counsel noted that plaintiff testified that he could sit for only 10 to 20 minutes and stand for 10 minutes and asked the VE whether a person could perform the identified jobs if he needed to shift positions with that frequency and the VE testified that the person could perform the identified jobs. (Tr. 50). Plaintiff fails to show that the ALJ erred in relying on the VE's testimony. To the contrary, the ALJ fully satisfied her duties under the SSR 00-04p. The Ruling requires an ALJ taking testimony about the requirements of a particular job to ask whether the testimony is consistent with the DOT and to obtain a reasonable explanation for any apparent conflicts. Here, the ALJ asked the VE whether his testimony was inconsistent with the DOT, and the VE testified that it was not inconsistent, but that the DOT was silent regarding the ability to switch between sitting and standing. (Tr. 49). The VE testified that his testimony regarding jobs that would exist with that limitation was based on his experience contacting employers, carrying out labor market research, and placing workers in the types of jobs discussed. (Tr. 50). As an initial matter, the VE's testimony indicated that there

was no conflict between his testimony and the DOT, because the DOT did not cover the topic.  Regardless, assuming that the VE's testimony conflicted with the DOT, rather than supplementing it, the VE provided an adequate explanation for his testimony, which would satisfy SSR 00-04p.

Plaintiff also argues that the ALJ could not rely on the VE's testimony because the VE did not provide DOT code numbers for the jobs he identified. According to the Commissioner, plaintiff's argument is based on an incorrect understanding of the ALJ's obligation to investigate conflicts between a VE's testimony and the DOT.  An ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by the Ruling.  *Beinlich v. Comm'r of Soc. Sec*., 345 Fed.Appx. 163, 168 (6th Cir. 2009) (citation omitted). Rather, the obligation to investigate an inconsistency falls to plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  *Beinlich*, 345 Fed.Appx. at 168.  The Commissioner also contends that plaintiff's argument that the VE's explanation for his testimony lacked detail is without merit because plaintiff had the opportunity to request additional detail from the VE at the hearing, but chose not to do so.  According to the Commissioner, the fact that plaintiff now believes that more information would be useful does not mean that the ALJ committed reversible error.

Plaintiff also argues that the ALJ erred in relying on the VE's testimony,

because the VE did not volunteer DOT code numbers for the jobs he identified.

Plaintiff claims that this prevents him from determining whether there was a conflict

between the DOT and the VE's testimony. Again, the Commissioner asserts that

plaintiff's argument is based on an incorrect understanding of an ALJ's obligation to

insure that there are no unexplained, apparent conflicts between a VE's testimony

and the DOT. Plaintiff's counsel questioned that VE on other topics, but did not

request the DOT codes plaintiff now believes are critical. Plaintiff's argument is

similar to an argument rejected by the court in *Rich v. Comm'r of Soc. Sec.*, 2008

WL 4450285 (E.D. Mich. 2008). In *Rich*, the court noted that there was no

requirement in the regulations for a VE to supply DOT numbers and stated that it

"decline[d] to find an error occurred because [Rich] would like to have additional

requirements imposed, particularly in this case, when [Rich] was represented at the

hearing by an advocate ... who took an active role in the hearing." *Id* at *5. The

Commissioner contends, therefore, that plaintiff fails to show that the ALJ erred in

relying on the VE's testimony.

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely reviews

the agency determination for exceeding statutory authority or for being arbitrary and

capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective

complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are

Report and Recommendation
Cross-Motions for Summary Judgment
*Kane v. Comm'r*; Case No. 11-15421

several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Report and Recommendation
Cross-Motions for Summary Judgment
*Kane v. Comm'r*; Case No. 11-15421

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his]

RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Treating physician evidence

As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007). "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Id*. at 406, citing § 404.1527(d)(2). Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used." Moreover, if the ALJ determined that plaintiff's treating physicians'

opinions should not be given controlling weight despite the medical evidence in

support, "the ALJ must still determine how much weight is appropriate by

considering a number of factors, including the length of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole,

and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*,

582 F.3d 399, 406 (6th Cir. 2009).

In this case, the ALJ gave sufficiently good reasons for declining to give

controlling or significant weight to Dr. Ehardt's opinions.  As the ALJ noted, Dr.

Ehardt did not treat plaintiff for his back conditions.  In the view of the undersigned,

Dr. Ehardt's opinions regarding the severity of plaintiff's functional limitations are

not entitled to great weight, given this fact alone because the basis of the treating

physician rule is to give deference to a medical source who can provide a detailed

longitudinal view of a claimant's treatment history and condition.  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007) ("Because treating

physicians are 'the medical professionals most able to provide a detailed,

longitudinal picture of [a claimant's] medical impairments and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective

medical findings alone,' their opinions are generally accorded more weight than

those of non-treating physicians.") (quoting 20 C.F.R. § 416.927(d)(2)); see also

SSR 96-2p, 1996 WL 374188.  As to plaintiff's back and pain conditions, Dr.

2:11-cv-15421-PJD-MJH   Doc # 25   Filed 03/16/13   Pg 27 of 43   Pg ID 569

Ehardt's opinions do not offer a detailed, longitudinal view because he did not treat him for this condition.

In addition, the ALJ observed significant inconsistencies between Dr. Ehardt's opinions and his clinical findings in that same opinion.  Specifically, while Dr. Ehardt opined that plaintiff had extreme difficulties walking and standing, he observed that plaintiff did not need to use a walking aid[1] and could walk in tandem and on his heels and toes.  (Tr. 357).  And, although Dr. Ehardt noted that plaintiff had a slow, shuffling gait, his other observations conflicted with this opinion.  (Tr. 357).  Furthermore, Dr. Ehardt noted that he could engage in straight leg raising to seventy-five degrees.  (Tr. 357).  Thus, the ALJ reasonably found that Dr. Ehardt's opinion was internally inconsistent.  (Tr. 18).  The ALJ also reasonably found a general lack of clinical and objective evidence to support Dr. Ehardt's opinion, post-surgery.  (Tr. 18).  The ALJ observed that while there was ample evidence to support the severity of plaintiff's condition from September 2009, his alleged onset of disability date, through his surgery in November 2009, there were no records or objective and clinical findings after that time to support plaintiff's alleged limitations.  (Tr. 18).  The ALJ also specifically observed that plaintiff did not

---

[1] Plaintiff's argument suggests that he used a cane, however, the undersigned was unable to find any support for this suggestion in the record.  Indeed, the function reports completed by plaintiff suggest that he did *not* use a cane or other assistive walking device.  (Dkt. 9-6, Pg ID 204) (Adult Function Report dated 1/4/10); (Dkt. 9-6, Pg ID 216) (Adult Function Report - Third Party dated 2/5/10).

Report and Recommendation
Cross-Motions for Summary Judgment
*Kane v. Comm'r*; Case No. 11-15421

present to doctors after December 2009 for complaints of lower back pain.  (Tr. 17). For these reasons, the undersigned finds that the ALJ properly according little weight to Dr. Ehardt's opinions and gave sufficiently good reasons for doing so.

2.     Credibility

The undersigned agrees with the Commissioner that the ALJ's credibility analysis was not mere "boilerplate."  Rather, the ALJ assessed plaintiff's credibility by discussing the conflict between plaintiff's post-surgery treatment history for back pain and his alleged severe limitations.  The ALJ found that since plaintiff's surgery in November 2009, there were no records or objective and clinical findings to support plaintiff's alleged continuing limitations.  The ALJ acknowledged that plaintiff had conservative treatment for lower back pain commencing in January 2009, and surgery in November 2009.  But, the ALJ noted that beyond an appointment for treatment of back pain in December 2009, there was no further evidence that plaintiff sought treatment for his condition.  The undersigned agrees with the ALJ that it is reasonable to expect that a person with plaintiff's alleged debilitating impairments would have sought further treatment after surgery.  *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (A claimant's failure to seek treatment may undercut his or her credibility with respect to subjective complaints).  In addition, plaintiff admitted that he did not continue with the swim therapy recommended by his physician and there are notes suggesting

that plaintiff should follow up with physical and occupational therapy after his surgery, but there is no evidence in the record that such treatment was sought.  (Dkt. 9-7, Pg ID 348; Dkt. 9-8, Pg ID 428); *Strong v. Soc. Sec. Admin.*, 88 Fed.Appx. 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."); *Smith-Marker v. Astrue*, 839 F.Supp.2d 974, 984 (S.D. Ohio 2012) (citing 20 C.F.R. § 404.1530) (Generally a claimant must follow a recommended treatment plan, "or have a good reason for failing to do so."). The Commissioner's observation that plaintiff does not dispute the ALJ's finding that his extensive treatment apparently ended shortly after surgery is well-taken.

The ALJ also discussed how specific medical evidence contradicted plaintiff's claims of headaches and upper extremity symptoms.  While the ALJ found that plaintiff alleged upper extremity problems, there was no significant support in the record for upper extremity impairments.  After plaintiff's alleged onset of disability date, there was only one treatment note pertaining to upper extremity problems, in November 2009.  (Tr. 343-46).  At that appointment, plaintiff was instructed to undergo electrodiagnostic testing of his upper extremities, but there is no indications that he did so.  (Tr. 345).  Similarly, the ALJ found that plaintiff's complaints of regularly occurring headaches were unsupported.  (Tr. 17,

45).  The ALJ noted that plaintiff was treated for headaches following a myelogram in October 2009, but that since that time, there was no other evidence showing that plaintiff received treatment for headaches.  (Tr. 17).

As to plaintiff's complaints that the ALJ failed to consider medication side effects, the undersigned concludes that there is no evidence in the record that plaintiff ever complained of such side effects.  *See e.g.*, *Obuch v. Comm'r*, 2009 WL 877697 (E.D. Mich. 2009) ("Plaintiff's failure to provide objective medical evidence of his complained drowsiness or any evidence of him having complained of this side effect is fatal to his argument.").  Given his failure to ever make such complaints, the ALJ was entitled to conclude that plaintiff's allegations in this regard were not credible.

The ALJ's credibility analysis, which is entitled to considerable deference, is fully supported by substantial evidence.  Thus, the undersigned finds no basis to disturb the ALJ's credibility findings.

3.     Mental impairments

Plaintiff alleges several related errors with respect to the ALJ's finding that he did not have a "severe" mental impairment and that he retains sufficient attention and concentration to understand, remember and follow simple instructions.  The parties agree that the ALJ failed to make specific findings regarding the severity of plaintiff's mental impairment, as required by the applicable regulations. When

accounting for mental impairments at steps two and three of the sequential

evaluation, the ALJ must follow a "special technique" which requires specific

written findings documenting the claimant's functional limitations in four areas:

activities of daily living; social functioning; concentration, persistence, and pace;

and episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3), (e)(2).  These areas

are known as the "B" criteria.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653

(6th Cir. 2009).  The first three areas are rated on a five-point scale: none, mild,

moderate, marked, or extreme.  *Id.*  The fourth area is rated on a four-point scale:

none, one or two, three, or four or more.  *Id.*  If the claimant's rating is "none" for

all areas, he will not be considered to have a "severe" impairment at step two.  *Id.*

Otherwise, the ALJ considers the same criteria at step three.  If the claimant has a

severe impairment that does not meet a listing, the ALJ's findings for the criteria are

translated into an RFC assessment.  *See* 20 C.F.R. § 404.1520a(d)(30.  The ALJ is

required to document the application of the special technique in the written decision.

*Rabbers*, 582 F.3d at 654.

　　　The ALJ here concluded that plaintiff's pain disorder was not a severe

impairment, explaining:

> Based upon a one-time consultative psychiatric evaluation
> performed by M. Dibai, M.D. on March 3, 2010, [plaintiff]
> was diagnosed with pain disorder.  According [plaintiff's]
> report to Dr. Dibai, he did not think depression was [a]
> disabling problem for him and despite Dr. Dibai's
> diagnosis of pain disorder, Dr. Dibai was of the opinion

> from a psychiatric standpoint, [plaintiff's] examination
> was unremarkable as he had no significant signs of
> significant cognitive or mood disorder.
>
> Furthermore, upon the conclusion of the hearing in this
> matter, counsel was given additional time to submit
> medical records from the claimant's purported pain
> specialist but no such records were submitted, and counsel
> failed to respond to a letter from the undersigned
> indicating that the record would be closed based upon non-
> receipt of additional evidence.  Based upon the totality of
> the evidence, the record does not support a finding that
> pain disorder is a severe impairment.

(Dkt. 9-2, Pg ID 52 (internal record citations omitted)).  The ALJ thus did not

properly address the "B" criteria in 20 C.F.R. § 404.1520a(c).

The Sixth Circuit has recognized that "'[i]t is an elemental principle of

administrative law that agencies are bound to follow their own regulations.'"

*Rabbers*, 582 F.3d at 654 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

545 (6th Cir. 2004)).  But the Sixth Circuit also applies the harmless error principle

when reviewing administrative agency decisions in order to address situations in

which remand would amount to nothing more than "'idle and useless formality.'" *Id.*

(quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)).  In *Rabbers*,

the Sixth Circuit made it very clear that a case should not be remanded for further

administrative proceedings simply because an agency did not follow its procedures,

unless "the [plaintiff] has been prejudiced on the merits or deprived of substantial

rights because of the agency's procedural lapses."  582 F.3d at 654.  The Court

explained that requiring the ALJ to assign the "B" criteria a score is more of an

"'adjudicatory tool'" put in place to aid the Social Security Administration ("SSA")

in determining the severity of the plaintiff's mental impairment, as opposed to the

"good reason" requirement for assessing the weight to assign to a treating

physician's medical opinions, which is designed to provide an important procedural

benefit to plaintiffs. *Id.* at 656. The Court pointed out that it would be easier for a

reviewing court to apply the "B" criteria and determine if the plaintiff's mental

impairment would have satisfied the criteria than it would be for a reviewing court

to determine what an ALJ's reasoning would be for discrediting a treating

physician's opinion. *Id.* Ultimately, the Court in *Rabbers* held that "the special

technique" should not be regarded as such an "important procedural safeguard" to a

plaintiff that "an ALJ's failure to rate the B criteria will rarely be harmless.'" *Id.*

Thus, it is evident from *Rabbers* that the Sixth Circuit is willing to apply the

harmless error doctrine in cases assessing the special technique of 20 C.F.R. §

404.1520a.

The ALJ here discussed the medical evidence of plaintiff's pain disorder and

why it supported his finding that plaintiff's mental impairment was not severe.

(Dkt. 9-2, Pg ID 52). And, a review of Dr. Dibai's report supports the ALJ's finding

of no severe impairment. Dr. Dibai noted that plaintiff is currently taking Paxil,

with no complaints of side effects, and that, aside from his back pain, he "expressed

well being." (Dkt. 9-8, Pg ID 394-98). Dr. Dibai's report indicates no limitations in areas of daily activity or social functioning, noting plaintiff claimed he never had any conflict or interpersonal problems with anyone, he gets together with his family members frequently, he reads books and watches television, drives his daughter to school, does dishes, assists family members with fixing and installing fixtures, and makes some meals. *Id.* Dr. Dibai observed that plaintiff did not appear to be overtly anxious or depressed and there was no evidence of emotional lability. *Id.* Indeed, plaintiff reported to Dr. Dibai that he did not feel that "being depressed" "would be put as [his] disability." *Id.* Dr. Dibai concluded that plaintiff appeared able to grasp and sustain information and carry out instructions in response to questions, and that "[f]rom a psychiatric standpoint, the [plaintiff] appeared unremarkable. There were no signs of significant cognitive or mood disorder or any other psychiatric symptoms or signs." *Id.* The ALJ further pointed out that "[a]ccording to [plaintiff], his memory and concentration are 'pretty good' and he is able to care for his personal needs." (Dkt. 9-2, Pg ID 54).

Neither the plaintiff's testimony nor the record medical evidence indicates that plaintiff's pain disorder significantly affected his activities of daily living, social functioning or concentration, persistence or pace. Therefore, even if the ALJ had made specific findings regarding the "B" criteria and had properly applied the "special technique" of 20 C.F.R. § 404.1520a, it is clear from the record that

plaintiff's pain disorder was not a severe impairment to be considered at step two of the five step sequential analysis. Therefore, the ALJ's failure to properly follow 20 C.F.R. § 404.1520a in determining the severity of plaintiff's pain disorder is harmless error. *See Howl v. Astrue*, 2011 WL 91130, at *24 (M.D. Tenn. Jan. 10, 2011) (holding that the ALJ's failure to follow 20 C.F.R. § 404.1520a in determining the severity of plaintiff's depression is harmless error because neither the plaintiff's testimony nor the record medical evidence indicates that plaintiff's depression or PTSD significantly affected her). Further, the ALJ's finding that plaintiff had the RFC to understand, remember and follow simple instructions is supported by substantial evidence. Plaintiff had no treatment for his claimed mental condition, aside from a prescription for Paxil from his treating general practitioner, and Dr. Dibai found no signs of a significant cognitive or mood disorder or any other psychiatric symptoms or signs. (Dkt. 9-8, Pg ID 394-98).

Plaintiff also argues that the ALJ erred in failing to discuss that Dr. Dibai assigned plaintiff a Global Assessment of Functioning ("GAF") score of 45. However, it is well-recognized in the Sixth Circuit that GAF scores are a subjective rather than objective assessment and, as such, are not entitled to any particular weight. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores

indicating more severe mental limitations." *White v. Comm'r of Soc. Sec.*, 572 F.3d

272, 276 (6th Cir. 2009); *Kenney v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007)

("GAF is a clinician's subjective rating of an individual's overall psychological

functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw

medical data. Rather, it allows a mental health professional to turn medical signs and

symptoms into a general assessment, understandable by a lay person, of an

individual's mental functioning.").  Furthermore, the Commissioner "has declined to

endorse the [GAF] score for use in the Social Security and SSI disability programs,

and has indicated that [GAF] scores have no direct correlation to the severity

requirements of the mental disorders listings," *DeBoard v. Comm'r of Soc. Sec.*, 211

Fed. Appx. 411, 415 (6th Cir. 2006) (internal quotations omitted), and the Sixth

Circuit has stated that "we are not aware of any statutory, regulatory, or other

authority requiring the ALJ to put stock in a GAF score in the first place."

*Kornecky*, 167 Fed. Appx. at 511.  Thus, the ALJ's failure to discuss the GAF score

assigned to plaintiff does not render his analysis unreliable.  *See Howard v. Comm'r

of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ's failure to refer to GAF score

did not make his RFC analysis unreliable).  Furthermore, as the Commissioner

properly argues, the significance of the GAF score in this case is questionable, given

that the ALJ did discuss Dr. Dibai's report containing the score and plainly stated

that plaintiff was unremarkable from a psychiatric standpoint, and appears to be able

to grasp and sustain information and carry out instructions. *See Linebarger v. Comm'r of Soc. Sec.*, 2012 WL 3966297, at *7-8 (E.D. Mich. July 18, 2012) (ALJ's failure to mention to GAF scores was not legal error, and noting further that the ALJ did explicitly discuss the reports that contained the scores). Plaintiff therefore fails to demonstrate any reversible error in the ALJ's assessment of his mental condition.

    4.    Vocational testimony

Plaintiff argues that the ALJ erred in relying on the VE's testimony that certain jobs are available in the national economy that plaintiff could perform. Plaintiff first argues that the ALJ failed to indicate in his question to the VE how often the hypothetical person must be permitted to shift between sitting and standing. However, contrary to plaintiff's assertion, the ALJ did state that the person must be permitted to alternate between sitting and standing "as necessary," (Dkt. 9-2, Pg ID 85), implying that the person has the maximum flexibility to shift positions. Further, plaintiff's attorney noted that plaintiff testified that he could sit only 10 to 20 minutes and stand for 10 minutes and asked the VE whether a person could perform the identified jobs if he needed to shift positions that frequently, and the VE responded that he could. (Dkt. 9-2, Pg ID 88). Therefore, plaintiff's claim of error fails.

Plaintiff also argues that the ALJ did not obtain an adequate explanation from the VE as to any conflict between the VE's testimony and the Dictionary of

Report and Recommendation
Cross-Motions for Summary Judgment
*Kane v. Comm'r*; Case No. 11-15421

Occupational Titles ("DOT") concerning the need to alternate between sitting and

standing, as required by Social Security Ruling ("SSR") 00-04p.  Plaintiff's

argument fails.  SSR 00-4p imposes an affirmative duty on ALJs to ask VEs if the

evidence that they have provided "conflicts with the information provided in the

DOT."  SSR 00-4p.  In this case, the ALJ specifically asked the VE at the

conclusion of his testimony whether it was consistent with the DOT, and the VE

responded as follows:

> Your Honor, not inconsistent, but I have testified that jobs
> exist in the region both at the sedentary and light
> exertional levels that will allow only [sic] opportunity of
> changing positions between sitting and standing.  The
> DOT is silent.  It does not address in any fashion one's
> ability to do this sort of thing or not.  My indication that
> jobs exist that allow for the changing of positions is based
> on my experience contacting employers, carrying out labor
> market research, and placing workers in the kinds of jobs
> mentioned and enumerated.

(Dkt. 9-2, Pg ID 87-88).  Thus, the VE testified that the jobs were not inconsistent

with the DOT, and explained the basis for his opinion testimony, and the ALJ

justifiably relied on that testimony.

Moreover, plaintiff's attorney questioned the VE at the conclusion of the

ALJ's questioning, and thus had the opportunity to obtain more detail or

clarification if needed, but chose not to do so, and thus waived any argument he may

otherwise have had regarding the VE's testimony.  *See Beinlich v. Comm'r of Soc.*

*Sec.*, 345 Fed. App. 163, 168-69 (6th Cir. 2009) ("Even if there were an

inconsistency, the plaintiff has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by the plaintiff until after the ALJ issued his decision.").  And, even if an inconsistency did exist between plaintiff's RFC and the occupational requirements of the positions identified by the VE, as the Sixth Circuit's *Lindsley* decision makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p.  *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict).  Rather, "[t]his obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflict with the DOT.  The fact that plaintiff's counsel did not do so is not grounds for relief."  *Id.* (citing *Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir. 2008)).  Because the ALJ specifically asked the VE if his testimony was consistent with the DOT and uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not err by relying on such testimony in finding other jobs plaintiff could perform.  *See Lindsley*, 560 F.3d at 606.

Finally, plaintiff argues that the ALJ erred in relying on the VE's testimony because the VE did not offer DOT code numbers for the jobs he identified.  Plaintiff claims that this prevents him from determining whether there are any conflicts

between the DOT and the VE's testimony.  However, that same argument has already been considered and rejected by a court in this district.  In *Wilson v. Commissioner of Social Security*, 2011 WL 2607098 (E.D. Mich. July 1, 2011), the plaintiff argued that the ALJ erred in the step five analysis because the VE failed to provide the numeric codes associated with the positions identified as available to the hypothetical person, and two of the occupations identified, bench assembler and plastics sorter, conflicted with the DOT in that the DOT states that both are light rather than sedentary work and plastics sorter is semi-skilled work rather than light. *Id.* at *6.  The Court, Judge Avern Cohn, recognized that the Sixth Circuit has held that "[an] ALJ and [VE] are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the [DOT] classifications."  *Id.* (quoting *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that the ALJ did not err in evaluating the testimony of a VE when the VE testified that skilled occupations were available to an unskilled claimant)).  "Further, an ALJ 'may rely on the testimony of [a VE] even if it is inconsistent with the job description set forth in the [DOT].'"  *Id.* (citing *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995)).  The Sixth Circuit has explained that because "not all occupations are included in the DOT and the VE may use terminology that differs from the terms used in the DOT . . . the mere fact that the DOT does not list occupations with those precise terms does not

Report and Recommendation
Cross-Motions for Summary Judgment
*Kane v. Comm'r*; Case No. 11-15421

establish that they do no exist." *Beinlich*, 345 Fed. Appx. at 168; *see also* SSR 00-4p ("The DOT contains information about most, but not all, occupations."). "[N]either the DOT or [the VE's testimony] automatically trumps when there is a conflict." *Wright*, 321 F.3d at 616; SSR 00-4p. Thus, the fact that the job titles to which the VE testifies does not line up perfectly with the DOT does not render the VE's testimony inconsistent with the DOT as a whole. *See Lindsley*, 560 F.3d at 605.

Therefore, the ALJ here did not err in relying on the testimony of the VE at Step 5 of the sequential evaluation. *See Wilson*, 2011 WL 2607098, at *6.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to

raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 16, 2013                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>March 16, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Frederick J. Daley, Thomas J. Bertino, Jr., Derri T. Thomas, AUSA, and the Commissioner of Social Security</u>.

<u>s/Tammy Hallwood          </u>
Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>

Report and Recommendation
Cross-Motions for Summary Judgment
*Kane v. Comm'r*; Case No. 11-15421
