UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD G. KANE,

    Plaintiff,

v.                                          Case No. 11-15421
                                              Honorable Patrick J. Duggan

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.
_____/

## OPINION AND ORDER

Plaintiff applied for Social Security benefits on December 17, 2009, alleging that he became disabled on September 4, 2009. The Social Security Administration denied Plaintiff's application for benefits initially. Upon Plaintiff's request, Administrative Law Judge Beth J. Contorer ("ALJ") conducted a *de novo* hearing on January 13, 2011. The ALJ issued a decision on March 16, 2011, finding Plaintiff not disabled within the meaning of the Social Security Act and therefore not entitled to benefits. The ALJ's decision became the final decision of the Social Security Commissioner ("Commissioner") when the Social Security Appeals Council denied review. Plaintiff thereafter initiated the pending action.

Both parties have filed motions for summary judgment, which this Court referred to Magistrate Judge Michael Hluchaniuk. On March 16, 2013, Magistrate Judge Hluchaniuk filed his Report and Recommendation (R&R) recommending that this Court

deny Plaintiff's motion for summary judgment and grant Defendant's motion. At the conclusion of the R&R, Magistrate Judge Hluchaniuk advises the parties that they may object to and seek review of the R&R within fourteen days of service upon them. Plaintiff filed objections to the R&R on April 1, 2013.

## STANDARD OF REVIEW

Under 42 U.S.C. Section 405(g):

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . The court shall have the power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive . . .

42 U.S.C. § 405(g)(emphasis added); *see Boyes v. Sec'y of Health and Human Servs.*, 46 F.3d 510, 511-12 (6th Cir. 1994). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Abbott v. Sullivan*, 905 F.2d 918, 922-23 (6th Cir. 1990) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). The Commissioner's findings are not subject to reversal because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Kechler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Studaway v. Sec'y of Health and Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987).

The court reviews *de novo* the parts of an R&R to which a party objects. *See* Fed. R. Civ. P. 72(b); *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001). However, the Court "is not required to articulate all the reasons it rejects a party's objections." *Id*.

## ANALYSIS

An ALJ considering a disability claim is required to follow a five-step process to evaluate the claim. 20 C.F.R. § 404.1520(a)(4). If the ALJ determines that the claimant is disabled or not disabled at a step, the ALJ makes his or her decision and does not proceed further. *Id*. However, if the ALJ does not find that the claimant is disabled or not disabled at a step, the ALJ must proceed to the next step. *Id*. "The burden of proof is on the claimant through the first four steps . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987).

The ALJ's five-step sequential process is as follows:

1. At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).[1]

2. At the second step, the ALJ considers whether the claimant has a severe medically determinable physical or mental impairment that meets the

---

[1]The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since September 4, 2009. (ECF No. 92 at Pg ID 52.)

duration requirement of the regulations and which significantly limits the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c).[2]

3. At the third step, the ALJ again considers the medical severity of the claimant's impairment to determine whether the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets any Listing, he or she is determined to be disabled regardless of other factors.[3] *Id*.

4. At the fourth step, the ALJ assesses the claimant's residual functional capacity ("RFC") and past relevant work to determine whether the claimant can perform his or her past relevant work.[4] 20 C.F.R. § 404.1520(a)(4)(iv).

5. At the fifth step, the ALJ considers the claimant's RFC, age, education, and past work experience to see if he can do other work. 20 C.F.R. § 404.1420(a)(4)(v). If there is no such work that the claimant can perform, the ALJ must find that he or she is disabled.[5] *Id*.

---

[2]The ALJ concluded that Plaintiff has the following severe impairments: post lumbar laminectomy, discectomy and fusion, bilateral sciatica, lumbar disc protrusion with right foraminal stenosis, and advanced degenerative disc disease. (ECF No. 92 at Pg ID 52.) The ALJ specifically rejected the Plaintiff's claim of a severe pain disorder. (*Id*.)

[3]The ALJ analyzed whether Plaintiff's impairments met any of the listed impairments and determined that they did not. (ECF No. 92 at Pg ID 53.)

[4]The ALJ found that Plaintiff would have the residual functional capacity to perform a reduced range of sedentary work with the following limitations: lift and/or carry up to ten pounds occasionally, and lift and/or carry less than ten pounds frequently; sit for six of eight and stand and/or walk for two of eight hours of a workday with the ability to alternate between sitting and standing as necessary; occasionally perform all postural activities, except should never climb ladders; occasionally push and/or pull and must avoid concentrated exposure to hazards and extremes in temperatures and humidity. (ECF No. 92 at Pg ID 53.) The ALJ concluded that Plaintiff could not perform his past work with these limitations. (*Id*. at 53, 56.)

[5]The ALJ determined that considering Plaintiff's age, educational background, work experience, and residual functional capacity, there are a significant number of jobs in the national economy that Plaintiff can perform based on his exertional and non-exertional limitations. (ECF No. 9-2 Pg ID 19-20.) The ALJ therefore concluded that Plaintiff is not under a "disability" as defined in the Social Security Act. (*Id*.) Magistrate Judge Hluchaniuk found

Plaintiff raises a number of objections to the R&R. First, he claims that the ALJ's failure to establish the "B Criteria" of the special technique for mental impairments was not harmless error. Second, Plaintiff asserts that Magistrate Judge Hluchaniuk erred in concluding that the ALJ's failure to discuss Plaintiff's GAF score did not render his analysis unreliable. Third, Plaintiff asserts that the ALJ and Magistrate Judge erred in dismissing his treating physician's opinions finding that the physician did not treat Plaintiff for his back and pain conditions, as he in fact did treat Plaintiff for those conditions. Lastly, Plaintiff contends that there was substantial evidence for his treating physician's opinions and, contrary to the ALJ's and magistrate judge's finding, there were not inconsistencies.

Objection #1:

The regulations require an ALJ to follow a "special technique" when accounting for mental impairments at steps two and three of the sequential evaluation. 20 C.F.R. § 404.1520a(c)(3), (e)(2). As summarized by the Sixth Circuit Court of Appeals in *Rabbers v. Commissioner of Social Security*:

> At step two, an ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." [20 C.F.R.] § 404.1520a(b)(1). If the claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* §§

---

substantial evidence in the record to support this finding. (*See* ECF No. 25.)

> 404.1520a(b)(2), (c)(3). These four functional areas are commonly known as the "B criteria." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq.; *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more. *Id*. If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. *Id*. § 404.1520a(d)(1). Otherwise, the impairment is considered severe and the ALJ will proceed to step three. *See id.* § 404.1520a(d)(2).
>
> At step three, an ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder." *Id*. The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id*. § 404.1525(a). In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled.

582 F.3d 647, 652-53 (6th Cir. 2009)

The Commissioner has conceded that the ALJ failed to make specific findings regarding the severity of Plaintiff's mental impairment in accordance with the "special technique." The Commissioner argued however, and Magistrate Judge Hluchaniuk agreed, that this error was harmless because substantial evidence in the record supported the ALJ's finding that Plaintiff's mental impairment was not severe. Plaintiff argues in his first objection that this conclusion was incorrect and that the ALJ only could have concluded from the record that Plaintiff's mental impairment was severe.

Plaintiff contends that the record supported a moderate limitation in his daily

activities and social functioning. He points to a November 5, 2009 note in his medical record, indicating that his treating physician prescribed an anti-depressant and noted that Plaintiff felt depressed. Plaintiff also points to his hearing testimony where he stated that he gets very upset and that his wife would say he is depressed. Finally, he relies on Dr. M. Dibai's diagnosis of Plaintiff as having a pain disorder and dependent personality traits and assessment of Plaintiff's GAF score as 45.

Substantial evidence in the record, however, supported the ALJ's finding that Plaintiff's mental impairment was not severe. Aside from his back pain, to Dr. Dibai, Plaintiff expressed "well being" and that he did not think his depression was a disabling problem for him. (ECF No. 9-8 Pg ID 394-95.) While Plaintiff is correct that Dr. Dibai noted that Plaintiff was "initially somewhat arrogant and coming across defensively," the doctor reported that Plaintiff was cooperative throughout the interview and "became lenient and his attitude [became] softened, flexible and respectful." (*Id*. at 395.) Despite assigning Plaintiff a GAF score of 45 (which is irrelevant for the reasons discussed by Magistrate Judge Hluchaniuk), Dr. Dibai also found that "from a psychological standpoint, [Plaintiff] appeared unremarkable." (*Id*. at 397-98.) Plaintiff reported some current limitations on his activities– specifically fixing and installing fixtures and going hunting and fishing with friends; however, he continued to get together with family members frequently, read books and watched television, drove his daughter to school, did dishes, made some meals, and reported no conflict or interpersonal problems with anyone. (*Id*. 395-96.) Despite Plaintiff's report of some limitations on his daily activities, the ALJ

7

also set forth good reasons to not find Plaintiff credible. Additionally, Plaintiff testified that his memory and concentration are "pretty good" and that he is able to care for his personal needs. (ECF No. 9-2 Pg ID 81.)

The Court therefore rejects Plaintiff's first objection to the R&R.

Objection #2:

According to Plaintiff, while an RFC may be accurate despite the ALJ's disregard of the claimant's GAF score, it is not accurate if the GAF score is ignored *and* there are other failures in the ALJ's assessment of the claimant's mental conditions. Here, because the ALJ ignored Dr. Dibai's GAF score assessment *and* failed to apply the special technique in assessing Plaintiff's mental limitations, Plaintiff argues the RFC was inaccurate. For the reasons set forth above, however, the ALJ's failure to apply the special technique was harmless. The Court therefore finds no error in Magistrate Judge Hluchaniuk's analysis concerning the ALJ's failure to consider the GAF score.

Objection #3:

Magistrate Judge Hluchaniuk concluded that the ALJ appropriately discredited the opinions of Plaintiff's treating physician because the physician, Dr. Paul Ehardt, did not treat Plaintiff for his back conditions. Plaintiff maintains that Dr. Ehardt in fact did treat him for his back pain and referred him to specialists.

Nevertheless, the ALJ cited a number of additional and legitimate reasons for according Dr. Ehardt's opinions little weight. Specifically, the ALJ concluded that those opinions were inconsistent with the doctor's reported clinical findings. (ECF No. 9-2 Pg

ID 55-56.)  The ALJ also correctly noted that Dr. Ehardt is not a back specialist. Furthermore, the medical evidence Plaintiff cites regarding Dr. Ehardt's treatment for his back pain precedes Plaintiff's surgery in November 2009.  As the ALJ found, there are no records or objective and clinical findings to support Plaintiff's alleged continued limitations or Dr. Ehardt's March 15, 2010 opinion of those limitations.  The Court also notes that Plaintiff specifically testified at the hearing before the ALJ that he did not treat with Dr. Ehardt regularly for his back.  (*Id.* Pg ID 79.)  For these reasons, the Court finds no error in the ALJ's decision to give little weight to the opinions of Plaintiff's treating physician.

Objection #4:

Finally, Plaintiff claims there were not inconsistencies between the objective and clinical evidence and *all* of Dr. Ehardt's opinions and thus some of those opinions should have been accorded substantial weight.  Plaintiff also argues that despite the alleged inconsistencies between Dr. Ehardt's objective and clinical findings and his opinions, there was medical evidence to support his opinions.

Significantly, what the ALJ concluded was that "[w]hile there is ample evidence to support the severity of the claimant's condition from September 2009 through his surgery in November 2009, since this time there are no records or objective and clinical findings to support his alleged continued limitations." (ECF No. 9-2 Pg ID 56.)  The medical evidence Plaintiff points to in his objections fails to demonstrate that this finding was in error.  Plaintiff seems to be arguing that the ALJ should have found that the pre-operative

9

objective and clinical findings support Dr. Ehardt's opinion of his post-operative limitations because of the condition Plaintiff suffered (advanced disc disease). (Pl.'s Obj. at 12.) This Court does not believe that the ALJ's failure to make this finding warrants reversal. In other words, the Court does not believe there is any authority that required the ALJ to assume that Plaintiff's condition before his surgery continued post-surgery. Moreover, as the ALJ noted, Plaintiff had medical insurance at all times and one could reasonably expect that he would have sought further treatment following surgery if he in fact suffered from such continued debilitating impairments.

The Court therefore also rejects Plaintiff's last objection to the R&R.

### Summary

The Court concludes that there was substantial evidence in the record to support the ALJ's evaluation of Plaintiff's impairments. The Court therefore adopts Magistrate Judge Hluchaniuk's recommendation to deny Plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision of the Commissioner finding that Plaintiff is not disabled within the meaning of the Social Security Act.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for summary judgment is **DENIED**; and

**IT IS FURTHER ORDERED**, that Defendant's motion for summary judgment is **GRANTED**.

Dated: April 22, 2013

                              <u>s/PATRICK J. DUGGAN</u>
                              UNITED STATES DISTRICT JUDGE

Copies to:
Frederick J. Daley, Jr., Esq.
AUSA Derri T. Thomas
Magistrate Judge Michael Hluchaniuk